# Illinois Official Reports

## Appellate Court

---

*People v. McWilliams*, 2015 IL App (1st) 130913

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RAHIM McWILLIAMS, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-13-0913 |
| Filed | January 21, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from defendant's convictions for armed robbery and aggravated unlawful restraint arising from an incident in which he and two other men took a large amount of cash from a couple lured to a meeting with defendant to purchase a car he apparently listed for sale on Craigslist, his two convictions for aggravated unlawful restraint were vacated under the one-act, one-crime doctrine, since restraint was inherent in and concurrent with the armed robbery, but the sentences imposed on defendant for armed robbery were not an abuse of discretion and were affirmed. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-3996; the Hon. James B. Linn, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

Counsel on
Appeal

Michael J. Pelletier and Ginger Leigh Odom, both of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Paul Connery and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE HYMAN delivered the judgment of the court, with opinion. Presiding Justice Pucinski and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Rahim McWilliams was convicted of two counts of armed robbery and two counts of aggravated unlawful restraint. On appeal, McWilliams contends that his aggravated unlawful restraint convictions must be vacated because they are based on the same act as his armed robbery convictions in violation of *People v. King*, 66 Ill. 2d 551 (1977). We agree that McWilliams's convictions for both aggravated unlawful restraint and armed robbery violate *King*'s one-act, one-crime doctrine, where restraint was inherent in and concurrent with the armed robbery, and thus vacate McWilliams's two aggravated unlawful restraint convictions.

¶ 2    McWilliams also contends that his concurrent 12-year sentences for each armed robbery count are excessive. We disagree and conclude that the trial court did not abuse its discretion in the sentencing of McWilliams. Nothing indicates that the trial court failed to consider mitigating factors and the sentence was well within the statutory range.

¶ 3                                      BACKGROUND

¶ 4    McWilliams, who was 24 years old, was charged by indictment with two counts of armed robbery and two counts of aggravated unlawful restraint. The charges arose out of the robbery of Adam Bock and Jessica Dean by three men on February 9, 2012. Bock and Dean later identified McWilliams as one of the robbers.

¶ 5    Adam Bock testified that he drove to the 2800 block of South Lowe, Chicago, to purchase a car on February 9, 2012. The car had been listed on Craigslist by an individual named "Sam." Bock had been in contact with Sam and agreed to meet to purchase the car. Bock's girlfriend, Jessica Dean, accompanied him. The couple arrived at the South Lowe address at around 7 or 8 p.m., with close to $6,000 in cash. Bock called Sam who said he was on the way. Sometime later, McWilliams walked out of a gangway across the street. He identified himself as Sam, and said that the car was in the garage in back. McWilliams, Bock, and Dean walked toward the garage. As they passed the house, two men ran out of the basement with what appeared to be pistols. They told Bock and Dean to get on the ground asking, "Where's the money?" McWilliams and the others also told the couple to get on the

ground and not to move. Dean screamed and McWilliams told her, "Shh, shh, shh, shut up." One of the other men hit Bock in the back of the head with his gun. The two other men put their guns to Bock's and Dean's heads. McWilliams asked where the money was and grabbed for Dean's purse from her hands, which he took "by force." The men also took Bock's cell phone, wallet, cash, and credit cards. The men then told the couple to stay on the ground, count to either 50 or 100, and not move. The men left. After counting to 50, the couple ran to the front of the house. They found people out walking and borrowed a phone to call police.

¶ 6        Jessica Dean testified that she drove to the 2800 block of South Lowe with Bock. McWilliams walked out through a gangway from behind a nearby house. The couple walked up to McWilliams, who identified himself as "Sam." They all walked to the back of the house, where two men came up behind them with guns. The men pointed their guns at Dean's and Bock's heads. One of the men struck Bock in the head with a gun butt. McWilliams turned the couple around and pushed them down to the ground. He told them to get on the ground and give him money. Dean gave one of the three men her purse. They took Bock's wallet and phone. The men told them to stay on the ground and count to 50. After counting to 50, Dean and Bock ran to the street and borrowed a phone to call police.

¶ 7        Chicago police officer Ryan King testified that he heard a flash message describing a robbery and three suspects. King and his partners spotted three individuals parked at a Wendy's. While interviewing the men, King saw a purse in the car's front seat. The two other men fled. When the officers searched McWilliams they recovered $4,552. Bock and Dean were brought to the Wendy's, where they identified McWilliams. Inside the car police found two BB guns and the purse, which held Dean's driver's license.

¶ 8        The State rested and the trial court denied McWilliams's motion for a directed verdict. McWilliams rested without presenting evidence.

¶ 9        The trial court found McWilliams guilty on both counts of armed robbery and both counts of aggravated unlawful restraint.

¶ 10        At McWilliams's sentencing hearing, the State argued that the offense was planned and violent. It noted that McWilliams had previously been convicted of two felonies and several misdemeanors, including two separate misdemeanor battery convictions. In mitigation, McWilliams argued that the crime was committed with BB guns, McWilliams did not carry either gun, and he did not strike anyone. The "vast majority" of the stolen items were recovered. McWilliams noted that he had been employed at the time of his arrest, had no gang connections, and was a "model student" in high school. McWilliams supported his three young children and girlfriend and had earlier completed a drug treatment program. McWilliams argued that his criminal background contained no violent felonies. McWilliams's mother and stepfather spoke, calling him a "good boy" and "good young man." McWilliams read a letter he had written, asserting his innocence and challenging the evidence presented against him at trial.

¶ 11        The trial court sentenced McWilliams to 12 years' imprisonment on each count of armed robbery and 5 years' imprisonment on each count of aggravated unlawful restraint, with all sentences to run concurrently. McWilliams appeals.

ANALYSIS

One Act, One Crime

McWilliams first contends we should vacate his convictions for aggravated unlawful restraint of Bock and Dean as both are based on the same act of restraint as his convictions for armed robbery. The State responds that each conviction is supported by distinct and separate conduct. It notes that McWilliams lured Bock and Dean to the back of a home, where they were told to get on the ground. McWilliams and two other men asked where the money was and one of the men struck Bock in the back of the head with a BB gun. The men took Bock's and Dean's property, which the State argues completed the robbery. Thereafter, the men told Bock and Dean to stay on the ground and count to 50.

McWilliams acknowledges that he forfeited the issue by failing to raise it at the trial level, but urges us to apply a plain error analysis. A reviewing court may consider an error, despite forfeiture, when a clear and obvious error occurred and either (1) the evidence is so closely balanced that the error alone threatened to tip the scales of justice against defendant or (2) the error is so serious as to challenge the integrity of the judicial process. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). The Illinois Supreme Court has ruled that a violation of the one-act, one-crime doctrine challenges the integrity of the judicial process and passes the second prong of plain error analysis. *In re Samantha V.*, 234 Ill. 2d 359, 378-79 (2009). One-act, one-crime challenges are subject to *de novo* review. *People v. Artis*, 232 Ill. 2d 156, 161 (2009).

Under one-act, one-crime principles, a defendant cannot be convicted of multiple offenses "carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566 (1977). When offenses stem from multiple related acts, multiple convictions with concurrent sentences are permitted so long as the offenses are not lesser included offenses. *Id.* An act is "any overt or outward manifestation that will support a different offense." *Id.*

Where two convictions are predicated on a singular act, a reviewing court must vacate the conviction of the lesser offense. *People v. Artis*, 232 Ill. 2d 156, 170 (2009). To determine which offense is the lesser offense, the reviewing court must compare the applicable sentence for each crime. *Id.* An offender commits aggravated unlawful restraint when he or she knowingly detains another without legal authority and while using a deadly weapon. 720 ILCS 5/10-3, 10-3.1 (West 2010). Aggravated unlawful restraint is a Class 3 felony. *Id.* An offender commits armed robbery when he or she takes property from another by the use of force or by the threat of imminent force, while armed with a dangerous weapon. 720 ILCS 5/18-2(a)(1) (West 2010). Armed robbery is a Class X felony when it is accomplished with a weapon other than a firearm. *Id.* While a robbery is complete on the taking of property, the simultaneous use of force or the threat of force during an escape "may be viewed as continuing the commission of the offense." *People v. Dennis*, 181 Ill. 2d 87, 103 (1998).

This court has addressed the interplay of armed robbery and aggravated unlawful restraint convictions under *King* principles multiple times. Recently in *People v. Daniel*, 2014 IL App (1st) 121171, this court vacated a defendant's aggravated unlawful restraint conviction finding the restraint was "inherent" in the concurrent armed robbery. *Id.* ¶ 55. The *Daniel* defendant drew a gun, demanding that a store owner give him money. *Id.* ¶ 3. The owner took money from the register, but the defendant ordered the owner onto the ground and

threatened to shoot him. *Id.* The defendant took more money from the register and ordered the owner to crawl to the back of the store, kicking and beating him the entire way. *Id.* The defendant demanded more money and took the owner's wallet; he then placed his gun in the owner's mouth and said that he would shoot if the owner talked. *Id.* The defendant then joined a second offender in the store's office and the owner escaped. *Id.* This court reasoned that the restraint began and ended with the armed robbery, and thus, that restraint could not be viewed as an independent act. See *id.* ¶ 55; see also *People v. Lee*, 376 Ill. App. 3d 951 (2007) (unlawful restraint conviction vacated where restraint ended with robbery). In *Daniel*, we vacated the defendant's unlawful restraint conviction. *Daniel*, 2014 IL App (1st) 121171, ¶ 55.

¶ 19    McWilliams and his co-offenders initially ordered Bock and Dean to the ground while pointing BB guns that the victims believed were real guns. One of the men struck Bock in the head with the butt of the BB gun. The men then took Bock's and Dean's money, phones, and items. After instructing Bock and Dean to stay on the ground and count to 50, they fled. McWilliams and his co-offenders committed no further "overt or outward manifestation." As in *Lee* and *Daniel* the restraint of Bock and Dean was inherent in the robbery and ended concurrently with the robbery. The robbery did not end once the men had taken Bock's and Dean's property, as the State argues, but continued until they had fled the scene, because the escape was facilitated by the same threat of force that accomplished the robbery.

¶ 20    The State argues that the incident consisted of two separate restraints: an initial restraint when the men ordered Bock and Dean to the ground and a second restraint when they told Bock and Dean to remain on the ground and count to 50. But this nuanced distinction carves two acts out of one, in violation of *King*. When the men told Bock and Dean to stay on the ground, they did not restrain the couple anew, but merely continued to restrain them. At no point did Bock and Dean become unrestrained and become restrained again. Once restrained, the couple did not move to a separate location; they did not get up and then return to the ground. The offenders made no additional threat to keep the couple restrained while they fled. The restraint of Bock and Dean was a single, continuous act inherent in the armed robbery.

¶ 21    The State's reliance on *People v. Crespo*, 118 Ill. App. 3d 815 (1983), is misplaced. In *Crespo*, the defendant and a co-offender entered a tavern and ordered everyone to the floor. *Id.* at 816-17. The defendant subsequently threatened to shoot anyone who withheld money while the co-offender produced a knife. *Id.* at 817-18. Both during and after the robbery, the co-offender held a man at knife-point. *Id.* at 817. The reviewing court found that the defendant's robbery conviction was supported by his threat to shoot and his partner's production of the knife, while the defendant's unlawful restraint conviction was based on the separate acts of ordering the tavern's customer's to the ground and holding a man at knife-point. *Id.* at 823-24.

¶ 22    Unlike in *Crespo*, the evidence presented here did not include an additional threat by McWilliams or his co-offenders. The men produced their weapons as they ordered Bock and Dean to the ground and kept the guns pointed at the couple until they fled. The implicit threat to use the weapons was an inherent part of restraining the couple and keeping the couple restrained during the course of the robbery. As such, we find *Daniel* and *Lee* to be dispositive. McWilliams's acts of restraint were inherent in and concurrent to the armed robbery; therefore, his aggravated unlawful restraint convictions are based on the same,

singular act as the armed robbery convictions. Because aggravated unlawful restraint is a Class 3 felony and armed robbery is a Class X felony, McWilliams's two aggravated unlawful restraint convictions are the lesser offenses and should be vacated.

¶ 23    As we agree that McWilliams's aggravated unlawful restraint convictions are based on the same act as his armed robbery conviction, we need not address his alternative argument based on *People v. Crespo*, 203 Ill. 2d 335 (2003), and the State's alleged failure to "apportion" separate acts of restraint in the charging instrument and at trial.

¶ 24                    Review of Sentencing

¶ 25    McWilliams next contends that his two concurrent 12-year sentences for armed robbery are excessive given his potential for rehabilitation, lack of a violent criminal background, and other mitigating factors. He asserts that he had only two, nonviolent adult convictions and was only 24 years old at the time of the offense. He notes that he graduated high school, worked as a carpenter at the time of the incident, had strong family support, and regularly attended church.

¶ 26    The State argues that the trial court considered all factors in aggravation and mitigation and the sentence was within the statutory range.

¶ 27    All sentences reflect the seriousness of the offense committed and the objective of rehabilitating offenders to useful citizenship. *People v. Cooper*, 283 Ill. App. 3d 86, 95 (1996). The trial court must consider all factors of mitigation and aggravation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). We presume a trial court has considered all of the relevant factors of mitigation before it. *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010). That presumption cannot be overcome without affirmative evidence that the sentencing court failed to consider factors in mitigation. *Id.*

¶ 28    A reviewing court may only reduce a sentence when the record shows that the trial court abused its discretion. *People v. Streit*, 142 Ill. 2d 13, 19 (1991); *People v. Martin*, 2012 IL App (1st) 093506, ¶ 47. The reviewing court may not reverse the sentencing court just because it could have weighed the factors differently. *Streit*, 142 Ill. 2d at 19.

¶ 29    The sentencing range for armed robbery is 6 to 30 years. 720 ILCS 5/18-2(a)(1) (West 2010); 730 ILCS 5/5-4.5-25(a) (West 2010). A sentencing decision that falls within the statutory range will not be overturned unless it is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999). While McWilliams's sentence was double the minimum sentence, it was less than half of the maximum. The trial court found McWilliams's crime to be premeditated. It asked McWilliams's parents to speak in mitigation and explicitly referenced those statements in making its ruling. McWilliams has two prior adult felonies and several adult misdemeanor convictions. Notably, the court expressly recognized that McWilliams was eligible to serve his sentence at the 50% rate and, thus, would only serve six years in prison. McWilliams does not argue that the trial court did not consider the mitigating factors, but that the court improperly weighed the factors. We will not reverse the sentencing court just because the factors could have been weighed differently. *Streit*, 142 Ill. 2d at 19. We find that McWilliams's sentence does not vary greatly from the spirit of the law and, therefore, the trial court did not abuse its discretion in sentencing McWilliams to 12 years' imprisonment.

¶ 30                              CONCLUSION

¶ 31          The judgment of the circuit court of Cook County is affirmed in part and vacated in part.

¶ 32          Affirmed in part and vacated in part.