2019 IL App (1st) 170200-U

No. 1-17-0200

Order filed November 12, 2019

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 2786 |
| | ) | |
| REGINALD WRIGHT, | ) | Honorable |
| | ) | Allen F. Murphy, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's 65-year sentence for first degree murder is affirmed over his contention that the sentence was excessive in light of his criminal history and the particular circumstances of the offense.

¶ 2    Following a jury trial, defendant Reginald Wright was convicted of first degree murder (720 ILCS 5/9-1 (West 2010)) and sentenced to 65 years in prison. The sole issue raised on appeal is whether the sentence imposed is excessive in light of defendant's criminal history and the particular circumstances of the offense. For the following reasons, we affirm.

¶ 3    The evidence at trial established that, in the early hours of December 3, 2011, the victim Alex McClain, Nate Williams, Richard Pierce, Robert Drain and Maurice Banks were at My Place Lounge, located in Markham, Illinois. The bar was crowded with people. At about 3:30 a.m., a fight broke out amongst the patrons.

¶ 4    Brenton Griffin, who was working security that night, testified that at about 3:45 a.m. he ejected a short man with braids wearing a dark shirt. He identified the defendant as the man he ejected from the bar at that time. He also ejected a heavyset man whose forehead was bleeding. About 15 minutes later, Griffin heard gunshots.

¶ 5    Robert Drain testified "a guy and a girl got into it," at the bar that night and thereafter, "everybody started fighting." During the fight, Drain was hit in the forehead with a bottle and subsequently thrown out of the bar. He left the bar and went to the trunk of his car to find something to place on his forehead. After wrapping a shirt around his head, he returned to the bar, where he saw Richard Pierce "getting beat up by the security." While attempting to help Pierce, Drain heard three gunshots.

¶ 6    Richard Hunt testified that there was a "big brawl" in the bar in which people were throwing "bottles, chairs, beer bottles, punches." As a result of his involvement in the fight, Hunt was kicked out by security. He stayed outside the bar by the door for about five to ten minutes. He saw a man exit the bar and swing at Hunt, who put the man into a headlock. Nate Williams, who was nearby, told Hunt to leave the man alone. After Hunt released the man, someone behind Hunt started shooting. Hunt testified that he heard one gunshot and ran away. In a statement to police and in his grand jury testimony, Hunt identified the defendant, whom he knew from school, as the shooter, but denied doing so at trial.

¶ 7     Nate Williams testified that he left the bar to smoke a cigarette in his car. During that time, Maurice Banks told him that a fight had broken out in the bar. Williams got out of his car and went to the door of the bar to find his friends. He saw Drain exit the bar, go to his trunk, and place a shirt on his head. Williams walked to a different door and saw Alex McClain exit the bar. McClain, who had his back turned, was holding Hunt in a headlock and fighting with a couple of other men. While attempting to break up the fight, Williams heard a gunshot. He turned around and saw the defendant holding a black automatic handgun. Williams said defendant moved towards McClain, shooting three or four times. In court, Williams identified the defendant, whom he knew from school, as the shooter.

¶ 8     Todd Hartman, a crime scene investigator for the Illinois State Police, recovered two discharged shell casings from near the east door of the bar. Hartman also recovered one spent projectile inside a green Acura located in the bar's east parking lot. The parties stipulated that the two shell casings were fired from the same gun.

¶ 9     The medical examiner testified that McClain suffered a gunshot wound to his right upper arm that traveled to his chest cavity and damaged his right lung, a gunshot wound to the back of his right forearm, a graze wound on the back of his right hand, and abrasions on the left side of his face and forehead. The manner of death was homicide.

¶ 10     On September 13, 2016, Reginald was found guilty of the first degree murder of Alex McClain. On January 5, 2017, a sentencing hearing was held.

¶ 11     The presentence investigation (PSI) indicated that defendant had five prior felony convictions "for drugs, drug dealing and armed robbery." On the date that he shot and killed Alex McClain, the defendant was on parole for armed robbery. The State presented the victim

impact statements of Aja Sparkman, McClain's mother, and Antonio McClain, McClain's father. Sparkman stated that her son's murder took everything from her. She is now unable to trust people and feel joy like she used to. She suffers from nightmares and has trouble sleeping. Antonio stated that his son's death took more than just a life and impacted his family more than can be described with words. The defendant took a father from his daughter, causing him to miss "her first word, her first step, a father daughter dance, the reaction to meeting her first boyfriend, prom, giving her away on her wedding day and not to mention everything in between that only a father can give a daughter." He added that, "[n]o one should have to endure the pain that you have inflicted on me and my family again over a fist fight."

¶ 12    In mitigation, defense counsel argued that defendant "acted under strong provocation," because that night "everyone was fighting" and things "just spiraled out of control." He noted that defendant has worked as a porter while in custody and wishes to continue his education. Counsel also stated that imprisoning defendant, who has been shot multiple times, suffers nerve damage, wears a colostomy bag, and has one child and one stepchild, would cause excessive harm to him and his family. Counsel further asserted that the 25-year enhancement was a violation of the 8th Amendment rule against cruel and unusual punishment, and that even imposing a minimum sentence of 45 years would be a "*de facto* life sentence," because defendant was 35 years old. In allocution, defendant apologized to McClain's family for their loss and said that he was praying for them.

¶ 13    Before imposing the sentence, the trial judge stated that he had "considered the victim impact statements . . . and all factors in aggravation and mitigation." Defendant's actions in response to a bar fight were "shocking to the Court" and showed that he had "absolutely no sense

of respect for the quality of human life." The trial judge also stated that the defendant's criminal history was "extraordinary," noting that "we go from narcotics violations to a violent crime of armed robbery culminating in this murder case." The court also considered that there were other people in the parking lot at the time of the shooting who were placed in danger by defendant's actions. The trial judge sentenced defendant to 40 years for the first degree murder charge plus 25 years for the statutorily mandated firearm enhancement, for a total of 65 years' imprisonment.

¶ 14    Defendant filed a motion to reconsider the sentence, arguing that it was excessive in light of his background and the nature of his participation in the offense. In denying defendant's motion, the trial court acknowledged that the sentence is "very severe," but "appropriate." We agree.

¶ 15    A trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference on review. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The trial court is in a superior position "to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Although a trial court must consider mitigating factors in making its decision, it has no obligation to recite each factor and its accorded weight. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Absent some indication to the contrary, we presume a trial court properly considered all the relevant mitigating factors presented. *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 16    A reviewing court will not reweigh the aggravating and mitigating factors and substitute its judgment for that of the trial court just because it would weigh those factors differently. *People v. Busse*, 2016 IL App (1st) 142941, ¶ 20. Where a sentence falls within the statutory

range, we presume it is proper and will not alter it absent an abuse of discretion. *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42 (quoting *People v. Fern*, 189 Ill. 2d 48, 54 (1999)). An abuse of discretion exists where the sentence imposed is at a great variance with the spirit and purpose of the law, or is manifestly disproportionate to the nature of the offense. *Id.*

¶ 17    Here, we find that the trial court did not abuse its discretion in sentencing defendant to 65 years in prison. The sentencing range for first degree murder is 20 to 60 years (730 ILCS 5/5-4.5-20(a) (West 2010)), However, since the defendant in this case personally discharged a firearm that proximately caused death, he was subject to a 25-year to natural life enhancement (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2010)). The possible sentencing range in this case was a minimum of 45 years and a maximum of natural life imprisonment. Therefore, the 65 year sentence imposed in this case is within the statutory sentencing range and presumed proper. *People v. Knox*, 2014 IL App (1st) 120349, ¶ 46. This presumption cannot be overcome without affirmative evidence that the trial judge failed to consider factors in mitigation. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 27 (citing *People v. Flores*, 404 Ill. App. 3d 155, 158 (2010)). However, the record in this case shows that the trial court "considered all factors in aggravation and mitigation" at the sentencing hearing.

¶ 18    Defendant essentially asks us to reweigh the sentencing factors and substitute our judgment for that of the trial court. This we cannot do. See *Busse*, 2016 IL App (1st) 142941, ¶ 20. Because the sentence is presumed to be proper and the record reflects that the trial court considered both aggravating and mitigating evidence, we find that the court did not abuse its discretion in sentencing defendant to 65 years' imprisonment for first degree murder.

¶ 19    Affirmed.