2024 IL App (1st) 221920-U

No. 1-22-1920

Order filed April 10, 2024

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 8749 |
| | ) | |
| GENOVE MARTIN, | ) | Honorable |
| | ) | Angela M. Petrone, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice R. Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's 18-year sentence for second-degree murder is affirmed over his contention that his sentence was excessive given the mitigating evidence.

¶ 2    Following a jury trial, defendant Genove Martin was found guilty of second-degree murder (720 ILCS 5/9-2(a)(2) (West 2020)) and sentenced to 18 years in prison. On appeal, defendant

argues that his sentence was excessive where the trial court did not give sufficient weight to the mitigating evidence. We affirm.[1]

¶ 3    Defendant was charged by indictment with multiple counts arising from the death of Caleb Reed. The State proceeded on two counts of first-degree murder while armed with a firearm.

¶ 4    At trial, Derrianna Ford, Reed's girlfriend, testified that defendant and Reed were friends. On July 31, 2020, she learned that Reed had been shot that day. Ford exchanged messages with defendant, who told her that he had been standing next to Reed and "would tell" her more. Defendant and Ford made plans to meet, but defendant did not appear and never told her what happened. She saw defendant at a vigil for Reed and at his funeral.

¶ 5    Chicago police detective Ruben Weber testified that he canvassed the scene of the shooting on West Granville Avenue. Footage from a security camera was recovered. Regular and slowed versions of the video were published and entered into evidence. This court has viewed the video, which is included in the record on appeal.

¶ 6    In the video, a group of four males walk down a sidewalk and a gray vehicle drives in the same direction. The gray vehicle exits the frame and then reappears driving toward the group. The gray vehicle pulls to the opposite side of the street from the males. The male in front of the group, identified as defendant, gestures to the driver and looks over his left shoulder as he continues walking in the opposite direction. The gray vehicle starts to drive away. Defendant then stops, pulls a firearm from his pocket, and turns toward the gray vehicle. He plants his feet in a wide stance, holds the firearm with both hands, and fires toward the gray vehicle as it drives away. All

_____

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

four males in the group run. Defendant continues shooting as he moves backwards. As the male in the back of the group runs, he suddenly falls onto the sidewalk.

¶ 7    Jarrod Wieser testified for the defense as an eyewitness to the shooting. From his vehicle at a stop sign at Granville and Damen Avenue, Wieser observed a vehicle about halfway to three-quarters of the way down the block parked at an angle. Four young men were walking on the sidewalk away from Wieser and past the parked vehicle. About five seconds later, Wieser saw shots fired from the parked vehicle and the young men. The gunshots were close together and he could not tell who shot first. The vehicle sped away and the young men ran. One man turned and was shooting as he ran. On cross-examination, Wieser testified that he saw one or two people shooting towards the vehicle, and shots were fired from the vehicle towards the group.

¶ 8    Defendant testified that he and his friends were walking when they encountered a Hispanic man, whom they did not know, shouting and flashing gang signs at defendant's group while the man walked to a vehicle. Defendant and his friends kept walking. They noticed the same vehicle return from the opposite direction and the man put a black and silver firearm in the air, but he did not point it at them. The vehicle returned, approached "kind of fast," and stopped in the middle of the street. The man, who was in the vehicle, shouted "what are you?" and "[d]rop it," referring to gang affiliation. Defendant complied and hoped the man would leave them alone. The man started shooting at them through the vehicle's window. Defendant drew his firearm and shot back, fearing that he and his friends would be shot or killed. After the shooting, defendant fled to a park, where he threw his firearm in the garbage.

¶ 9    Defendant learned from a friend that Reed had been shot. When defendant returned to the scene, he saw police and other emergency personnel. Defendant had left Reed because he was

afraid that the man in the vehicle was still in the area. Defendant did not tell anyone what happened because he was afraid to go to prison for having a firearm or defending himself. Defendant exchanged messages with Ford shortly after the shooting, and he wanted to know the severity of Reed's injuries. At that point, defendant believed that the man in the vehicle had shot Reed. Defendant was arrested on August 30, 2020. At the police station, after he had viewed the video from the incident, defendant realized he may have accidentally shot Reed.

¶ 10     On cross-examination, defendant confirmed that after watching the video, he saw Reed running towards him as he discharged his firearm. Defendant acknowledged seeing Reed fall in the video, but denied that occurred when defendant discharged his firearm. When asked if he agreed that it was a bullet he fired which killed Reed, defendant responded "Possibly. Yes." He also confirmed that on the day of the shooting, he did not go back to check on Reed or speak with police about what had happened. Although he never visited Reed's family to relate what happened, he spoke briefly with Reed's brother at the funeral about being shot at by a vehicle. Defendant never told police he possessed a firearm on the day of the incident, and he stopped talking to police when confronted with the video of the shooting.

¶ 11     The jury found defendant guilty of two counts of second-degree murder, which the trial court merged. The court denied defendant's motion for new trial.

¶ 12     Defendant's presentence investigation report (PSI) reflects that he was 18 years old at the time of the incident. Defendant was raised by his mother and rarely spoke with his father. He had a "great" relationship with his mother, siblings, wife, and 18-month-old son.

¶ 13     Defendant graduated from high school, where he was on the honor roll and involved with extracurricular sports. He enrolled in Chicago State University, but was unable to attend due to

this case. He hoped to attend college in the future. Defendant worked as a security officer for two months until his arrest for the instant offense. Before that, he worked in customer service at a laundromat for eight or nine months.

¶ 14    Defendant was diagnosed with PTSD while awaiting trial and was receiving treatment for stress and anxiety due to this case. Defendant had no gang associations. Defendant tried alcohol once or twice and disliked it, but he had smoked marijuana since he was 16 or 17 years old. He denied a history of substance abuse.

¶ 15    At the sentencing hearing, the State presented victim impact testimony from Reed's mother, older sister, and family friend, as well as a letter from Reed's father. All spoke of how Reed was missed by his family and friends, and the joy he had brought them during his life.

¶ 16    Defense counsel introduced 12 letters from defendant's mother, wife, friends, and other members of the community. Letters were also submitted from the Chicago Bond Fund, which had worked with defendant as he awaited trial, and Communities United, which defendant had worked with prior to his incarceration. The letters attested to his good character, his dedication to his son, and his close relationship with his family and friends. The letters also expressed that defendant felt great remorse and experienced depression and PTSD from the incident. Defense counsel also presented the testimony of defendant's mother, wife, great aunt, and a family friend, who all attested to defendant's good nature and remorse. Defendant's mother and wife also spoke about how defendant had been his son's primary caretaker in the months prior to trial, and that his son had suffered from losing that contact with his father.

¶ 17    In allocution, defendant expressed remorse and apologized to Reed's family.

¶ 18    In aggravation, the State argued that the jury's verdict reflected that defendant had a belief in self-defense, but that belief was unreasonable. The State noted that defendant fired at a vehicle that was driving away and no one in his group was injured by the man in the vehicle. Further, defendant's conduct in pointing a loaded firearm in the direction of the vehicle and his three friends, who were mere feet from him, was "egregious." It also highlighted that, though defendant did not intend to harm Reed, he had several opportunities to avoid the shooting. The State argued that the most significant factor in aggravation was the facts of the case and requested a "significant" prison sentence.

¶ 19    In mitigation, defense counsel highlighted defendant's good behavior and compliance with electronic monitoring. Though defendant could not work on bond, he became the primary caretaker of his son. Counsel then addressed several statutory factors, including that defendant had no criminal history, his criminal conduct was unlikely to recur, he was unlikely to commit another crime in light of his character and attitude, and he was likely to comply with probation. Counsel requested that defendant receive probation, because the "case was so extraordinary." Counsel also highlighted that defendant was 18 years old at the time of the offense, had a favorable education record and potential for rehabilitation, and expressed remorse. Counsel requested "the least possible sentence."

¶ 20    The trial court sentenced defendant to 18 years in prison. In announcing its sentence, the court recited the trial evidence, noting that "defendant shot at the car before anybody in the car shot at him or even verbally threatened him." The court also noted defendant's unwillingness to come forward in the weeks following Reed's death, and that he attended Reed's funeral and vigil without speaking to anyone about what occurred. The court remarked that defendant denied he had

a firearm when the police arrested him a month later, even when confronted with the video evidence, and he testified that Reed was possibly shot from a bullet from his firearm and did not fall when defendant was shooting in his direction.

¶ 21    The court "considered the numerous letters advocating for the defendant," which addressed compassion, the opportunity for defendant to find redemption and live a meaningful life, his remorse, and the negative effect defendant's incarceration would have on his child. The court referenced the PSI, which indicated "much of what's already been said." The court highlighted that defendant graduated high school with good grades and, prior to this offense, he had substantial employment. The court noted defendant was 18 years old at the time of the offense, and the jury accepted defendant's assertion of self-defense although his belief was unreasonable. The court stated that it had "considered the facts of the case, all the statements that were presented from both sides, and the defendant's statement in allocution."

¶ 22    The trial court also discussed the relevant statutory factors in aggravation and mitigation in detail and stated that it "considered all of the factors in aggravation and mitigation" required by the law. The court found that defendant had rehabilitative potential but his degree of participation in the incident was "great." The court further found that defendant had no criminal history and had led a "law-abiding life" before this offense. The court did not believe defendant's actions were influenced by peer pressure, family, or any other negative influence. While the court found it "inexplicable" that defendant chose to marry and "have a baby" while awaiting trial on charges for first-degree murder, it agreed with counsel that defendant's 1½ year-old child's wellbeing would be negatively affected by defendant's absence and his incarceration would cause a hardship to his family.  The court considered it uncertain whether the circumstances are unlikely to recur,

as it saw "some minimizing." The court noted that "[t]he first remorse [it] heard at all from the defendant was today" and defendant had previous opportunities "to indicate what he had done."

¶ 23    Regarding factors in aggravation, the court believed the sentence was necessary to deter others. The court found "most aggravating" that "defendant left his friend without helping him" and then later "acted like he had nothing to do with it." After reviewing the statutory factors, the court noted that defendant would be eligible for probation after serving 50% of his 18-year sentence, and that, in conjunction with time served on electronic monitoring, he could serve less than 8 years in prison.

¶ 24    Defendant filed a motion to reconsider sentence and a supplemental motion. In the motions, defendant argued, *inter alia*, that the court did not consider mitigating factors, including his work and educational background, lack of a criminal record or prior delinquency, unlikeliness that criminal conduct would recur, letters of support, and family impact statements reflecting the negative effects of his absence on his infant child. The trial court denied the motion.

¶ 25    On appeal, defendant contends that his 18-year sentence for second-degree murder was excessive. He argues that the court failed to give sufficient weight to mitigating evidence, including that defendant is unlikely to re-offend where the jury determined that the offense was prompted by an unreasonable belief in self-defense, his lack of criminal history, his remorse, his education and employment history, the impact on his young child, and his supportive family.

¶ 26    The Illinois Constitution provides that a trial court shall impose a sentence balancing "the seriousness of the offense" and "the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The trial court has broad discretion when imposing a sentence. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). Where a defendant challenges a sentence within the

statutory limits for the offense, this court will not disturb it absent an abuse of discretion. *People v. Burton*, 2015 IL App (1st) 131600, ¶¶ 35-36. In the sentencing context, an abuse of discretion occurs when a sentence is "manifestly disproportionate to the nature of the offense." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 50. A reviewing court will not substitute its judgment for that of the trial court merely because it would have weighed the sentencing factors differently. *Alexander*, 239 Ill. 2d at 213.

¶ 27    In fashioning a sentence, the sentencing court must balance the retributive and rehabilitative purposes of punishment, which includes carefully considering all factors in aggravation and mitigation. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). These factors include "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *Id.* A trial court is not required to recite and assign a value to each factor. *People v. Williams*, 2019 IL App (1st) 173131, ¶ 21. However, the seriousness of the crime is the most important factor in determining an appropriate sentence, and there is no requirement for the court "to give greater weight to mitigating factors than to the seriousness of the offense, nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence." *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. The trial court is presumed to have properly considered all mitigating factors and rehabilitative potential before it, and the defendant bears the burden to affirmatively show the contrary. *People v. Brazziel,* 406 Ill. App. 3d 412, 434 (2010).

¶ 28    In this case, defendant was found guilty of second-degree murder, a Class 1 felony offense with a sentencing range of 4 to 20 years in prison. 720 ILCS 5/9-2(d) (West 2020); 730 ILCS 5/5-

4.5-30(a) (West 2020). Because his 18-year sentence is within the statutory range for second-degree murder, we must presume it is proper barring affirmative evidence to the contrary. *People v. Villalobos*, 2020 IL App (1st) 171512, ¶ 73.

¶ 29    Nevertheless, defendant argues that his 18-year sentence was excessive as the trial court did not properly consider the mitigating evidence and unique circumstances. We disagree.

¶ 30    Here, defendant offers no evidence, other than the sentence imposed, to show that the trial court did not properly consider the mitigating evidence. See *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19 (the trial court is presumed to have considered the mitigating evidence presented "absent some indication to the contrary, other than the sentence itself"). Indeed, the record shows the trial court expressly considered the same mitigating factors defendant raises before this court.

¶ 31    The trial court stated that it considered the letters in support submitted by defendant and the applicable statutory factors in mitigation and aggravation, and also recited the relevant information reflected in the PSI. Specifically, the trial court found that defendant had rehabilitative potential, lacked a criminal history, graduated high school with good grades, and had substantial prior employment history. The court also acknowledged the negative impact his incarceration would have on his family and child.[2] However, the trial court found "most aggravating" defendant's own actions following the shooting, emphasizing that "defendant left his friend without helping him" and later "acted like he had nothing to do with it."

¶ 32    As noted, the most important factor in determining an appropriate sentence is the seriousness of the offense, and there is no requirement for the trial court to give greater weight to

---

[2] In his brief on appeal, defendant asserts the trial court mistakenly surmised that his child was conceived after the offense. Regardless, the trial court's comments reflect that it thoroughly considered the effect of defendant's incarceration on his child.

the mitigating factors than the severity of the offense. *People v. Wilson*, 2016 IL App (1st) 141063, ¶ 11. Defense counsel argued the mitigating evidence and mitigating factors in an attempt to secure a lesser sentence, but the term imposed reflects that the court was not convinced to do so given the circumstances of the case. Defendant does not provide affirmative evidence rebutting the presumption that the sentencing court considered the relevant mitigating evidence. To the contrary, our review of the record shows that the trial court adequately considered all of the relevant mitigating evidence. Defendant is, essentially, requesting that we reweigh the same factors in aggravation and mitigation and independently conclude that the sentence was excessive, which we will not do. *People v. McWilliams*, 2015 IL App (1st) 130913, ¶ 28.

¶ 33    In conclusion, we do not find defendant's 18-year sentence for second-degree murder, which is within the applicable statutory sentencing range for the offense, at variance with the spirit and purpose of the law or manifestly disproportionate to the seriousness of the offense. See *People v. Stacey*, 193 Ill. 2d 203, 210 (2000). Accordingly, the trial court did not abuse its discretion in sentencing defendant to 18 years in prison.

¶ 34    For the foregoing reasons, we affirm the sentence of the trial court.

¶ 35    Affirmed.