(No. 69885.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. SHARON STREIT, Appellee.

*Opinion filed January 24, 1991.*

14

BILANDIC, HEIPLE and FREEMAN, JJ., took no part.

Neil F. Hartigan, Attorney General, of Springfield,

and Marshall E. Douglas, State's Attorney, of Rock Island (Robert J. Ruiz, Solicitor General, Terence M. Madsen and Arleen C. Anderson, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle, John X. Breslin and Judith Z. Kelly, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Robert Agostinelli, Deputy Defender, and Catherine M. Fitzsimmons, Assistant Defender, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE MORAN delivered the opinion of the court:

The defendant, Sharon K. Streit, pled guilty to two counts of State benefits fraud and she was sentenced to concurrent terms of two years' imprisonment by the circuit court of Rock Island County. On appeal, the appellate court affirmed the convictions, but vacated her sentences and remanded the cause for resentencing. (193 Ill. App. 3d 443.) This court allowed the State's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The sole issue presented for review is whether the trial court abused its discretion in sentencing the defendant to concurrent terms of two years' imprisonment.

The relevant facts are undisputed. The defendant was charged by information with two counts of State benefits fraud (Ill. Rev. Stat. 1987, ch. 38, par. 17—6), a Class 3 felony. Count I alleged that she received public aid in the form of Aid to Dependent Children (ADC) benefits and food stamps from August 1982 through September 1986. She procured these benefits through her knowing misrepresentation of her employment and financial status, in that she failed to report her employment with East Moline Care Center and she also failed to report that she was receiving child support. Consequently, she received $19,199 in excess benefits. The Department of Public

Aid discovered the fraud, confronted the defendant and asked her to pay the money back. The defendant filed for bankruptcy. The State did not file criminal charges at the time.

Count II alleged that approximately a year after the first fraud was discovered, she reapplied for ADC benefits and food stamps, again claiming she was unemployed, when, in fact, she was employed by Care Home, Incorporated. As a result, she obtained an additional $3,202 in excess benefits from September 1987 through May 1988.

The defendant entered a partially negotiated guilty plea on both counts. According to the plea agreement, the State would not recommend more than three years in the Department of Corrections. The trial judge concurred with the plea agreement, accepted defendant's plea, entered judgment of conviction on both counts of the information and ordered a presentence investigation report.

The director of probation services of Rock Island County conducted a presentence investigation and filed a report with the court. As part of the investigation, an investigator conducted a number of interviews. The defendant was also interviewed and she told the investigator that she committed the fraud so that she could make ends meet and, at the same time, raise her children in a decent manner. Two of the caseworkers with the Department of Public Aid were also interviewed. One of the caseworkers stated that the defendant was able to receive benefits because she used a different social security number at her place of employment than the number she provided to the Department of Public Aid.

The investigator included some personal history about the defendant in the report. Generally, her health was considered good, but she did suffer from high blood pres-

sure and diabetes. She had been married three times and, during the course of these marriages, she gave birth to four children. However, all three marriages ended in divorce. She also gave birth to a fifth child as a result of a nonmarital relationship.

The defendant was employed as a nurse's assistant with many different employers throughout the mid to late 1980s. The record reveals that during this period, she would often work more than eight hours a day. Her average weekly pay was approximately $250 and she also received $160 a month in child support from her second husband. The investigator noted in the report that the defendant had a tendency to exercise poor judgment in financial matters and that counseling on this subject would be beneficial to her.

On June 19, 1989, the defendant appeared for sentencing and a hearing in aggravation and mitigation was held. The defendant testified as follows: her reason for committing benefits fraud was because she needed the money to pay certain living expenses, such as house payments and clothes for her children; she generally worked six days a week and, for one brief period, worked 95 hours a week; she understood that her actions were wrong and she felt remorse about what had happened; and she was willing to pay back the money she fraudulently obtained.

Three family members testified on defendant's behalf. Each stated that the defendant regretted what she had done and each believed that she could successfully complete a term of probation.

The State recommended 30 months' probation on the condition that the defendant serve six months of home detention and that she pay restitution in the amount of 20% of her take-home pay. Defense counsel addressed the bench and stated that the defendant would successfully complete a period of probation.

The judge referred to section 5—6—1 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—1) and mentioned that probation was the preferred disposition in a case of this kind. However, he explained that the defendant could be imprisoned if, after considering the nature and circumstances of the offense and the history, character and condition of the offender, he believed that imprisonment was necessary for the protection of the public or that probation would deprecate the seriousness of the offense.

In sentencing the defendant, the court noted that a number of mitigating factors were present. The defendant did not have a prior criminal record and her conduct did not cause or threaten other persons with physical harm. Her conduct could be partially excused because the money was used to support her children. The defendant had worked hard in the past and she was willing to make restitution. The defendant also deeply regretted her actions.

However, the judge noted that aggravating factors were also present. She committed the first offense over a period of years and, as a result, fraudulently acquired over $19,000 from the State. The defendant committed the identical offense a second time, even though the first. offense was brought to her attention. The judge was concerned about this type of offense and that "some kind of message need[ed] to be delivered." He reasoned that others had to be deterred from committing this type of crime.

Due to the presence of mitigating factors, the judge sentenced the defendant to the minimum prison term for a Class 3 felony, which is two years (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(6)). The defendant filed a motion for modification of sentence, which was denied.

A trial court's sentencing decisions are entitled to great deference and weight. (*People v. Perruquet* (1977);

68 Ill. 2d 149, 154.) A trial judge is in a far better position than an appellate court to fashion an appropriate sentence, because such judge can make a reasoned judgment based upon firsthand consideration of such factors as "the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age" (*Perruquet*, 68 Ill. 2d at 154, citing *People v. Dukett* (1974), 56 Ill. 2d 432, 452); whereas the appellate court has to rely entirely on the record (*People v. Morgan* (1974), 59 Ill. 2d 276, 282).

Nonetheless, the discretion of a trial court in making sentencing decisions is not totally unbridled. Reviewing courts are empowered under our Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)) to reduce sentences. The standard of review is whether a trial court has abused its discretion in imposing a sentence; if it has, the sentence may be altered upon review. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 297-98; *Perruquet*, 68 Ill. 2d at 154.) When reviewing courts examine the propriety of sentences imposed by trial courts, they should proceed with great caution and care. (*People v. Harper* (1972), 50 Ill. 2d 296, 301.) A reviewing court must not substitute its judgment for that of a sentencing court merely because it would have weighed the factors differently. *People v. Pittman* (1982), 93 Ill. 2d 169, 178.

The appellate court concluded that the trial court abused its discretion in sentencing the defendant to two years' imprisonment, finding that imprisonment would not "be of any benefit to society, to the defendant, or to our system of justice." (193 Ill. App. 3d at 446.) The defendant maintains that the appellate court properly vacated the sentences because the trial court: (1) ignored compelling mitigating circumstances; and (2) relied upon only one aggravating factor, the need to deter others, when it imposed prison sentences as opposed to sentences of probation. The State claims that the court did

not abuse its discretion because it carefully considered all the evidence, both in mitigation and in aggravation, before imposing the two-year sentences. After reviewing the record, we cannot say the trial court abused its discretion.

The record clearly reveals that the judge reached his sentencing decision only after he balanced all of the mitigating and aggravating factors in conjunction with section 5—6—1 of the Code. The judge began by noting that the statutory presumption in a Class 3 felony matter was a sentence of probation. Moreover, he explained that if certain factors were present, the defendant could be sentenced to prison.

The judge considered the mitigating factors in the instant case as opposed to ignoring them, as the defendant claimed in her brief. In fact, the judge stated that "[t]here are of course some mitigating factors here." Moreover, the judge decided, "[b]ecause of the mitigating factors," he would only give her the minimum sentence of two years, as opposed to three years, which she could have received under the terms of the plea agreement. The record clearly demonstrates that the judge considered the following mitigating factors about the defendant and her crime before he reached his sentencing decision: (1) her conduct did not cause or threaten serious harm to the public; (2) her conduct was partially excused because some of the money was used to support her dependent children; (3) her willingness to make restitution; (4) her feeling of remorse over the crime; (5) her medical condition; (6) the hardship imprisonment would cause her dependents; (7) she did not have a prior criminal record; and (8) her hard-working past.

Along with the mitigating factors, the judge considered the following aggravating factors as well: (1) the need to deter others from committing the same crime; (2) the first offense occurred over a period of years; (3)

the first offense was a sizeable violation, over $19,000; and (4) she committed the identical crime approximately a year after the first offense was brought to her attention. The judge did not base his sentencing decision on just one aggravating factor, as the defendant incorrectly claimed in her brief.

The defendant has cited the case of *People v. Bolyard* (1975), 61 Ill. 2d 583, wherein the court found that a trial court abused its discretion. In that case, the trial judge had announced at the presentence hearing that he subscribed to a personal and inflexible policy whereby certain crimes were not probationable. Under these circumstances, the court remanded the matter for resentencing, finding that the trial judge's sentencing decision was arbitrary.

The instant case is clearly distinguishable from *Bolyard*. In that case, the trial judge had sentenced the defendant on the basis of an arbitrary category that was personal to him and not provided for in the Code; whereas the record in the case before us demonstrates that the trial judge carefully balanced the aggravating and mitigating factors within the parameters of the Code (Ill. Rev. Stat. 1987, ch. 38, pars. 1005—5—3.1, 1005—5—3.2, 1005—6—1).

The appellate court majority in the instant case concluded that the trial court abused its discretion, reasoning that, because of mitigating factors, two-year sentences of imprisonment would not be beneficial to society, the defendant, or our judicial system. However, it is the province of the trial court to balance these factors and make a reasoned decision as to the appropriate punishment in each case. (*Pittman*, 93 Ill. 2d at 178.) In vacating the sentences, the majority found it noteworthy that the State recommended probation. (193 Ill. App. 3d at 445.) But, a court is not bound by the sentencing rec-

ommendation of the State. *People v. Hancasky* (1951), 410 Ill. 148, 155.

We have reviewed the record and find that the trial court did not abuse its discretion in sentencing the defendant to concurrent terms of two years' imprisonment.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICES BILANDIC, HEIPLE and FREEMAN took no part in the consideration or decision of this case.