THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM P. RIPLEY, Defendant-Appellant.

Third District    No. 3—96—1064

Opinion filed August 21, 1997.—Rehearing September 29, 1997.

Justin A. Teitle, of Davenport, Iowa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and Rita Kennedy Mertel, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCUSKEY delivered the opinion of the court:

Following a jury trial, the defendant, William P. Ripley, was convicted of aggravated battery of a child (720 ILCS 5/12—4.3(a) (West 1994)). The defendant was sentenced to a term of 10 years' imprisonment.

On appeal, the defendant argues: (1) he was not proved guilty beyond a reasonable doubt; and (2) the sentence imposed was excessive. Following our careful review of the record, we affirm.

## FACTS

On May 30, 1995, paramedics received a call that a child was not breathing. They went to the defendant's home and found the victim, the defendant's 15-month-old foster son, in a nonresponsive state. The victim was transported to Trinity East Medical Center. He was found to be unresponsive, very pale, flaccid and had difficulty breathing on his own. He was transferred to St. Francis Hospital in Peoria by helicopter and was treated by Dr. Robert Paul Cruse, a pediatric neurologist.

Dr. Cruse testified that he examined the victim's eyes and saw hemorrhages of fresh blood in the back of both eyes. The victim underwent a computerized axial tomography (CAT) scan and magnetic resonance imaging (MRI). Both tests revealed bleeding and areas of hemorrhage in the brain. They also showed some swelling of the brain. Dr. Cruse concluded that the bleeding occurred within three to four days of the tests and that the injuries were caused by an acceleration deceleration trauma, or shaken baby syndrome. Dr. Cruse testified that a violent force is necessary to cause the type of injuries found in the victim. He said that this type of injury requires much more violent force than the force that would cause a typical whiplash injury in a car accident. As a result of the violent force, the veins in the victim's brain tore. The doctor said that this is called a shear injury. Dr. Cruse specifically stated that bouncing or jarring a child does not cause this type of injury. Violent and rapid force of acceleration deceleration, or shaking, is required to cause a shear injury.

Dr. Cruse testified that brain swelling caused by violent shaking usually peaks in the third or fourth day following the injury. Because this type of injury is like a "mega concussion," vomiting results and is a common symptom. Seizures are also common from this type of trauma. Dr. Cruse said that the victim had suffered damage to the

motor area of the brain which controlled the right side of his body. Because of this damage, the victim has persistent paralysis to his right side and delayed language development.

The defendant initially told the police that the victim had fallen on May 27, 1995. When told by the police that the victim's injuries had been caused by a violent shaking, the defendant admitted shaking the victim in the shower on May 27. The defendant said that he shook the victim a little bit to get him to settle down.

At trial, the defendant's wife, Mary Ripley, testified that she and the defendant obtained custody of the victim in November 1994. They were in the process of adopting the victim before he was injured. She testified that neither she nor the defendant had any experience in taking care of young children. She stated that the defendant gave the victim a shower on the evening of May 27, 1995. She said she heard the defendant tell the victim to settle down. After the shower, the victim acted like he was tired and would not stand up. His eyes looked bugged out and bloodshot. Shortly after the shower, the victim threw up. The next morning, the victim went with them to church and acted normally. However, during the next few days the victim had frequent episodes of vomiting. He also had a fever the afternoon of May 29, 1995. On the morning of May 30, 1995, the victim had a seizure and appeared to stop breathing. The defendant called 911, and Mary started cardiopulmonary resuscitation (CPR).

The defendant, who was 39 years old and weighed 337 pounds, testified that the victim started to fall in the shower the evening of May 27, 1995. He grabbed the victim and yanked him back. The victim's head snapped back, and the defendant told him to settle down or he was going to get hurt. During cross-examination, the defendant admitted that he shook the victim in the shower. The defendant said he was not angry but was trying to settle the victim down. He demonstrated for the jury that he did not shake the victim very hard. The defendant testified he did not intend to hurt the victim and was not aware that shaking could cause an injury to a child.

The State presented a rebuttal witness who testified she talked to Mary on the telephone the morning of May 27, 1995. Mary stated that she and the defendant put the victim in the shower as a form of punishment when he was not behaving.

The jury found the defendant guilty of aggravated battery of a child. The presentence investigation report indicated the defendant had no prior criminal history. The report revealed that he had some health problems, including high blood pressure and problems with his feet and back. The report also stated that the victim was now $2^1/2$ years old. The victim was, at the time of the report, just starting to

be able to sit by himself and could walk with assistance. The report said the victim still suffered from paralysis of his right side and had borderline/mild mental retardation.

At the sentencing hearing, the defendant presented 11 mitigation witnesses. The witnesses testified that the defendant often did volunteer work at the Salvation Army, took care of his disabled wife and helped his elderly parents, who were unable to drive. The witnesses also testified that the defendant was kind, gentle, understanding and had never been a violent person. The defendant exercised his right of allocution. He said he was very sorry about the injuries to the victim and stated that he never meant for anything like that to happen.

The trial judge stated that he had considered all the evidence presented in mitigation. However, he concluded from the evidence that a sentence of probation would deprecate the seriousness of the defendant's conduct. The judge then imposed a sentence of 10 years' imprisonment. The defendant filed a motion to reconsider the sentence. The trial court denied the defendant's motion. This timely appeal followed.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

The defendant initially argues that the State did not prove he intentionally or knowingly caused great bodily harm to the victim. See 720 ILCS 5/12—4.3(a) (West 1994). The defendant notes that he consistently said he did not intend to hurt the victim. The defendant claims the evidence failed to show he was aware that shaking the victim would cause great bodily harm.

■ We note the law is clear that, when the sufficiency of the evidence is challenged in a criminal case, the relevant question on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). We also note that knowledge is ordinarily established by circumstantial evidence, rather than by direct proof. *People v. Rader*, 272 Ill. App. 3d 796, 803, 651 N.E.2d 258, 263 (1995). In addition, a "defendant is presumed to intend the probable consequences of his acts, and great disparity in size and strength between the defendant and the victim, as well as the nature of the injuries, may be considered in this context." *Rader*, 272 Ill. App. 3d at 803, 651 N.E.2d at 263. A defendant need not admit knowledge for the trier of fact to conclude that the defendant acted knowingly. *Rader*, 272 Ill. App. 3d at 806, 651 N.E.2d at 265.

■ In arguing that the evidence was not sufficient to show he intentionally or knowingly injured the victim, the defendant relies on this court's decision in *People v. Holmes*, 246 Ill. App. 3d 179, 616 N.E.2d 1000 (1993). However, we conclude that *Holmes* was wrongly decided. We find that circumstantial evidence, including medical testimony regarding the severity of the injuries imposed, is sufficient to prove that the injuries were intentionally or knowingly inflicted, even where a defendant testifies that he did not intend to injure the victim. See *Holmes*, 246 Ill. App. 3d at 186-87, 616 N.E.2d at 1005 (McCuskey, J., dissenting).

In reaching our conclusion, we agree with the reasoning of *Rader* and *People v. Renteria*, 232 Ill. App. 3d 409, 597 N.E.2d 714 (1992). In *Rader*, the defendant testified that he did not intend to harm the victim. *Rader*, 272 Ill. App. 3d at 801, 651 N.E.2d at 262. In *Renteria*, the defendant testified that he shook the victim only to get him to start breathing. *Renteria*, 232 Ill. App. 3d at 414, 597 N.E.2d at 717. However, in both cases, the evidence showed that the victim's injuries were severe and permanent, were consistent with shaken baby syndrome and could only have been caused by severe and repetitive shaking. *Rader*, 272 Ill. App. 3d at 804-05, 651 N.E.2d at 264; *Renteria*, 232 Ill. App. 3d at 417, 597 N.E.2d at 719. In addition, the severe injuries were inconsistent with the defendant's version of what happened. *Rader*, 272 Ill. App. 3d at 805, 651 N.E.2d at 264; *Renteria*, 232 Ill. App. 3d at 417, 597 N.E.2d at 720. Based on those facts, the court in *Rader* found that a rational trier of fact could have inferred that the defendant *must have known* about the substantial probability of causing injury to the victim because of the severity of the violence necessary to cause the injuries. *Rader*, 272 Ill. App. 3d at 805, 651 N.E.2d at 264. Both courts found the evidence was sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that the defendant acted intentionally or knowingly in causing great bodily harm to the victim. *Rader*, 272 Ill. App. 3d at 805, 651 N.E.2d at 264; *Renteria*, 232 Ill. App. 3d at 416-18, 597 N.E.2d at 719-20.

Here, in the instant case, the evidence showed that the victim's injuries were severe and permanent, were consistent with shaken baby syndrome and could only have been caused by violent and repetitive shaking. Moreover, the severe injuries to the victim were completely inconsistent with the defendant's testimony. Under these circumstances, we hold that a rational trier of fact could properly conclude that the defendant acted intentionally or knowingly in causing great bodily harm to the victim. See *Rader*, 272 Ill. App. 3d at 805, 651 N.E.2d at 264; *Renteria*, 232 Ill. App. 3d at 416-18, 597 N.E.2d at 719-20. Accordingly, we affirm the defendant's conviction of aggravated battery of a child.

## II. SENTENCE IMPOSED

The defendant claims that his 10-year sentence of imprisonment is excessive. He argues that the trial court: (1) inappropriately balanced the aggravating and mitigating factors; and (2) improperly considered the defendant's intent as an aggravating factor.

■ We first note that the sentencing range for aggravated battery of a child is 5 to 30 years. 720 ILCS 5/12—4.3(a) (West 1994). The trial court imposed a sentence in the lower end of this range. A trial court's sentencing decision is entitled to great deference and weight. *People v. Streit*, 142 Ill. 2d 13, 18-19, 566 N.E.2d 1351, 1353 (1991); *People v. Perruquet*, 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884 (1977). A sentence within the permissible statutory range will not be disturbed on appeal absent an abuse of the trial court's discretion. *Perruquet*, 68 Ill. 2d at 154, 368 N.E.2d at 884.

■ In this case, we find from the record that the trial court carefully considered the relevant mitigating and aggravating factors. The defendant claims that the trial court failed to give the mitigating factors enough weight. However, it is the province of the trial court to balance these factors and make a reasoned judgment as to the appropriate punishment to be imposed. *Streit*, 142 Ill. 2d at 21, 566 N.E.2d at 1354. Based on our review, we find the trial court did not abuse its discretion when it balanced the relevant factors and imposed a sentence of 10 years' imprisonment.

The defendant also claims that the trial court improperly considered the defendant's intent as an aggravating factor. We disagree. At sentencing, the defendant addressed the court and insisted that he did not mean to hurt the victim. In response, the trial judge said that, based on his review of the evidence, the defendant did intend to shake the victim and therefore intended the natural consequence of that act, severe and permanent injuries to the victim.

A defendant's lack of remorse is a proper factor for the trial court to consider in sentencing. *People v. Guajardo*, 262 Ill. App. 3d 747, 768, 636 N.E.2d 863, 879 (1994). Consequently, the trial court can properly consider a defendant's lack of remorse or denial of guilt as it affects his prospects for rehabilitation. *People v. Anderson*, 225 Ill. App. 3d 636, 653, 587 N.E.2d 1050, 1062 (1992).

In this case, the trial court appropriately responded to the defendant's claim that he lacked the intent necessary to be guilty of the offense. The judge properly admonished the defendant that the evidence revealed that the defendant *did* intend to hurt the victim. As a result, we find the trial court's comments, and its consideration of the defendant's denial of guilt, were proper.

For the reasons indicated, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

SLATER and MICHELA, JJ., concur.