2023 IL App (2d) 220059-U
No. 2-22-0059
Order filed May 18, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19-CF-543 |
| ADRIAN VELASCO, | ) ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgenson concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court's application of mitigating factors, and its admittance of 11 victim impact statements had no prejudicial effect on defendant's sentence.

¶ 2    Defendant, Adrian Velasco, entered a cold guilty plea to two counts of aggravated driving under the influence. The counts merged and he was sentenced to a term of 10 years' imprisonment. The trial court denied his motion for reconsideration of his sentence, and defendant timely appealed (No. 2-21-0159). We granted defendant's unopposed motion for summary remand for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). On remand, defendant's counsel filed a second motion to reconsider sentence. The trial court denied the motion, and

defendant timely appealed. In this second appeal, defendant contends that the trial court erred when it did not apply certain mitigating factors to his sentence, and when it allowed an "excessive" amount of victim impact statements. Defendant argues that counsel failed to amend his 604(d) certificate to include either error which amounted to ineffective assistance. Defendant contends that the matter should be remanded for resentencing, or in the alternative, for counsel to amend his 604(d) certificate. For the reasons that follow, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4        On March 19, 2019, at about 7:00 p.m., defendant left his job at a sushi restaurant in Schaumburg. He had a work-related disagreement with his manager, who is his brother, and believed he would be fired. He went to a 711 convenience store, bought two Straw-Ber-Rita beverages and a 750-milliliter bottle of Jim Beam bourbon, and started drinking. Between 12:00 and 12:30 a.m. he returned to the restaurant and picked up Martha Arce and continued driving around and drinking in the vehicle. At approximately 1:40 a.m. on March 20, 2019, he drove the vehicle westbound on Summit Street in Elgin. As he approached Dundee Avenue he crossed into the eastbound lanes. He was on the curb driving on the sidewalk on the wrong side of the street. Defendant's vehicle struck another vehicle containing Omar Zavala and Norieli Villagomez which was stopped and waiting to exit a gas station. The incident was captured on video.

¶ 5        The collision caused the death of both Mr. Zavala and Ms. Villagomez. The passenger of defendant's car, Arce, suffered a broken clavicle. Defendant was charged by indictment with four counts of aggravated driving under the influence and two counts of reckless homicide.

¶ 6        On October 22, 2020, defendant entered a cold guilty plea to counts I and II, both charged under 625 ILCS 5/11-501(a)(1)(d)(1)(F), and the State *nolle prossed* the other four counts. The matter proceeded to a sentencing hearing.

¶ 7　　The State called one fact witness in aggravation, Officer Lawrence Jenco of the Elgin Police Department. Jenco testified to his own observations and some information that was reported by other officers during the course of the investigation. Shortly after officers arrived at the scene, defendant was transported to the hospital. His demeanor was described as "being carefree, joking around, lethargic, and then sleepy" and that responders would have to rouse him back to consciousness. Defendant had droopy eyes, was thick tongued, slurred his speech, and had a strong odor of alcohol. He vomited. Medical staff conducted a toxicology test and reported a blood alcohol reading of .320 through serum blood, which converted to a whole blood alcohol level of .271. Defendant stated to another officer that he was too drunk to drive and that he had consumed Everclear and Bud Light. Defendant was unable to stand up. The passenger in his car stated that defendant "had been driving crazy."

¶ 8　　At a later interview, defendant admitted to Jenco that he drank in his car and consumed multiple kinds of alcohol. He said he was feeling down because of the situation with his brother at his job. The investigation produced a meme from a Facebook post that defendant commented on the day before the accident. The image showed a racecar with the text "when Google maps changes your arrival time by two minutes." Defendant had commented, "when I'm drunk."

¶ 9　　Two time-distance studies were conducted by the Elgin Police to determine the rate of speed of defendant's vehicle at the time of collision. The first was conducted by Officer Raap and found an approximate speed of 75 miles per hour, and the second by Officer Spejcher indicated a rate of 77.3 miles per hour. The speed limit in the area is 30 miles per hour.

¶ 10　　The State then admitted into evidence two written victim impact statements without objection. One from Rocio Salamanca, Norieli Villagomez's aunt, and the second from Jasmin Zavala, Omar Zavala's sister. The next nine witnesses all provided oral victim impact statements.

¶ 11 The following loved ones of Norieli Villagomez submitted victim impact statements: Ismael and Paula Villagomez (her parents), Ingrid and Betty Villagomez (her sisters), Ivan Gutierrez (her cousin), Jesus Hernandez (a family friend), and Denisse Lopez (her best friend who was also an acquaintance of Omar Zavala). On behalf of Omar Zavala statements were given by Christi Gonzalez (his girlfriend and the mother of his child), and Jennifer Zavala (his sister).

¶ 12 Defendant gave the following statement in allocution:

"I'm here to apologize to the families that I've hurt and anyone else I may have hurt with my actions. I'm sorry for all the pain I've caused. If I could take it away and make it my own, I would, but I can't. I'm sorry that I'm still here and that (unintelligible), but if I could take their place, I would in a heartbeat.

This is no excuse, and I take full responsibility of what I done. At that moment in time, I was going through what seemed to be this perfect storm of problems that just -- that just kept on occurring, problem after problem after problem in that single day. I was physically, emotionally, and mentally pushed to my breaking point, and I just wanted that pain to go away. I made the mistake that -- thinking drinking was going to make that pain go away. I didn't know when I took that one drink I was going to change the lives of so many people who did not deserve this.

I know there's nothing I can say here that will change what happened, but I hope you'll see me differently, that this was an accident and I never meant to -- I never meant to hurt anyone. There's not a day that goes by that I'm not remorseful, that I don't think about what I've done. This will remain on my conscience for as long as I may live. I've sought help with my addictions and for myself, and I've tooken [sic] the first steps to therapy and to medication.

I do have plans for the future, your Honor. I -- I wish to be able to help people who are in my situation where they're bullied as a kid to the point where they don't know who they are anymore. I want to be able to warn the youth about the consequences of drugs and alcohol.

Words cannot express and won't express the guilt I feel here today, but I appreciate the chance to be heard here. Also, if you were to ask me what I've been doing since then, I would tell you that I just been laying down most of the time thinking about what I've done, seeing you guys's faces, hearing your voices. The pain, the anger, the hurt, the tears, they all just replay in my head over and over again. I know you will never forgive me. I just want you to know that I'm never going to forgive myself either.

Thank you."

¶ 13    Following defendant's statement, the trial court closed the hearing and noted that it would consider all the factors presented in both aggravation and mitigation, and would come back on March 11, 2021, to give defendant his sentence. At the sentencing hearing, the trial court listed the factors it considered in aggravation. It applied factor number seven, that this sentence was necessary to deter others from committing the same crime. The trial court also considered factor 20, that the speed at the time of the collision, which was at least 30 miles per hour greater than the limit, was in excess of the posted speed limit. In mitigation, the trial court found that factor two applied, which was that defendant did not contemplate that his criminal conduct would cause or threaten serious physical harm to another. The trial court then analyzed factors eight, nine, and ten, and whether there were extraordinary circumstances as follows:

"Now let's talk about (8), (9), and (10). Those are the factors in mitigation, which I'll read those for the record. Number (8), the defendant's criminal conduct was the result

of circumstances unlikely to recur. Number (9), the character and attitudes of the defendant indicate that he is unlikely to commit another crime. Number (10), the defendant is particularly likely to comply with the terms of a period of probation. Under all these mitigating factors in here, I can't find any of those. My lack of information is what comes to play in this. He has no previous criminal history that I've been made aware of in this matter. He has nothing to go back on at that point for me to judge whether he was able during that period of time to give me any information which would make me think he could do any of these things. I'm not considering those factors in mitigation because I don't have enough information to do that.

So we talked about the factors in mitigation, and in analyzing the statute against the statutory factors in mitigation, I find that very few of these mitigating factors would -- I find a few factors in mitigation, but I find those factors to be insufficient to establish extraordinary circumstances in this case which could open up a sentence of probation. I do not find extraordinary circumstances. There is nothing extraordinary about the facts of this case. The Defendant, aware of his alcoholic problems, drank alcohol to excess while angry and frustrated and drove his vehicle at an unreasonable, reckless speed, thereby causing the death of two completely innocent people."

¶ 14    Defendant was sentenced to 10 years in the Illinois Department of Corrections and to pay an agreed amount in restitution to the families of the deceased.

¶ 15    In closing, the trial court stated:

"Now let me talk about this a little bit. What entered primarily into my decision here was that he has no criminal record, felony or misdemeanor. He's never been on probation or parole. I went above the minimum sentence due to the factor concerning the

amount of speed used in this matter. I found that to be an aggravating factor, and that's why I came off the minimum sentence.

*** In speaking to everybody who has been interested in this particular matter, I don't know how other people view what justice is. I can't get into everyone's minds about that, about what you consider to be justice in a situation like this. Some people may consider justice to be as the Bible says, an eye for an eye and a tooth for a tooth. That's not available to the [c]ourt. That's not how the court system is done. We can't do an eye for an eye and a tooth for a tooth. That would mean the defendant, Mr. Velasco, would have to die for his crimes, and that's not available. That is not justice in how the courts view justice in the matter. I can't give an eye for an eye, if that's what you think justice is. I can't make you miss them less or take away your anger about the whole thing. That's not possible for me to do, either. All I can do is work within the framework of the law, and I must take into consideration the rights of the deceased, the rights of all of the people in the community, and the rights of the Defendant."

¶ 16    Defendant filed a motion to reconsider sentence which was denied on March 25, 2021. That same day, defendant filed a notice of appeal. That appeal, No. 2-21-0159, was remanded for compliance with Rule 604(d), because counsel had failed to file a certificate. Trial counsel then filed a 604(d) certificate and a second motion to reconsider sentence which was substantively identical to the one previously filed on March 17, 2021, and argued only that the trial court had not given proper consideration to defendant's rehabilitative potential. The trial court denied that motion and stated that it had considered defendant's rehabilitative potential. Defendant timely appealed from that order.

¶ 17                                II. ANALYSIS

¶ 18    On appeal, defendant contends that the trial court erred when it did not consider three statutory factors in mitigation during sentencing, and that trial counsel erred when he failed to include that error in the motion to reconsider. Defendant next contends that trial counsel failed to object to the number of victim impact statements that were allowed during the sentencing hearing. As a result of those errors defendant argues he received ineffective assistance of counsel, and this matter should be remanded for resentencing. Alternatively, defendant contends that counsel's failure to include these purported errors refutes his facially valid Rule 604(d) certificate, and the case should be remanded for further Rule 604(d) proceedings. Essentially, defendant has made claims of ineffective assistance of counsel. To make out a claim for ineffective assistance of counsel, a defendant must show that (1) defense counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, (1984). We will address defendant's contentions in turn.

¶ 19    First, we turn to defendant's contention that the trial court erred when it did not consider three statutory factors in mitigation. "The standard of review is whether a trial court has abused its discretion in imposing a sentence; ***." *People v. Streit*, 142 Ill. 2d 13, 19 (1991). Upon review, this court must not substitute its judgment for that of the sentencing court merely because it would have weighed the factors differently. *Id*. Only if the sentence "is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense" will it constitute an abuse of discretion. *People v. Stacey*, 193 Ill. 2d 203, 210, (2000).

¶ 20    Defendant was sentenced to 10 years' imprisonment. He pleaded guilty to aggravated driving under the influence of alcohol, a Class 2 felony, which carries a possible term of 6 to 28

years' imprisonment if the violation resulted in the deaths of two or more persons (625 ILCS 5/11-501(a)(1)(d)(1)(F); 625 ILCS 5/11-501(d)(2)(G)). The collision caused the death of Omar Zavala and Norieli Villagomez. The trial court is not required to recite all aggravating and mitigating factors before imposing a sentence. *People v. Spicer*, 379 Ill App. 3d 441, 469 (2007).

¶ 21    Here, the trial court made a record of the reasoning as to the applicable factors in both aggravation and mitigation. Defendant argues that not applying factors eight, nine, and ten was error. We disagree. The trial court chose not to apply those factors in mitigation because it did not have enough information to properly do so. This conclusion was not an abuse of the trial court's discretion and was not error. As we have found no error by the trial court, there was no ineffective assistance for trial counsel's decision not to object to it or omit it from the motion to reconsider sentence.

¶ 22    We now turn to defendant's second contention, that trial counsel performed deficiently by not objecting to multiple improper victim impact statements or including this issue in the motion to reconsider sentence. Where it is possible to resolve an ineffective assistance claim on the basis that the defendant suffered no prejudice as a result of counsel's allegedly defective performance, the claim may be decided against the defendant without consideration of whether counsel's performance was actually deficient. *People v. Coleman*, 168 Ill. 2d 509, 528 (1995).

¶ 23    In this case, we look to see if defendant was prejudiced by the cumulative admission of the victim impact statements such that the outcome of the proceedings, namely the length of the sentence, was different because of them. In this case, the trial court increased the minimum sentence of six years by four additional years. The court expressly stated how it came to that number. The court stated, "I went above the minimum sentence due to the factor concerning the amount of speed used in this matter. I found that to be an aggravating factor, and that's why I came

off the minimum sentence." Given that the trial court *explicitly* provided it's reasoning for the increase from the minimum sentence being the excessive speed of defendant's vehicle at the time of the crash, we know that it was not the victim impact statements that led to an increase in the sentence from the statutorily required minimum. As defendant did not suffer prejudice from the statements, counsel was not ineffective, and we decline to consider whether counsel's performance was deficient on this issue.

¶ 24 Defendant's contentions that the trial court failed to apply certain factors in mitigation and improperly admitted 11 victim impact impacts statements were errors that ultimately increased his sentence are contradicted by the record. We hold that counsel cannot be found ineffective where there was no error at the sentencing hearing or no resulting prejudice. We deny defendant's request for a new sentencing hearing.

¶ 25 Defendant's final argument is that his case should be remanded for a new hearing on his motion to reconsider sentence because trial counsel failed to include the purported errors discussed above which refutes his "facially valid" Rule 604(d) certificate. We here rely on our foregoing analysis that because defendant's alleged errors were either not errors or not prejudicial, counsel had no reason to assert them in a motion to reconsider the sentence.

¶ 26                                    III. CONCLUSION

¶ 27 We affirm the judgment of the circuit court of Kane County.

¶ 28 Affirmed.