NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (4th) 240498-U

NO. 4-24-0498

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | McLean County No. 23DV96 |
| v. | ) | |
| TYRELL LAVARR BINION, | ) ) | Honorable Scott Kording, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE VANCIL delivered the judgment of the court.
Justices Harris and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgment, concluding no meritorious issues could be raised on appeal.

¶ 2    After a bench trial, defendant, Tyrell Lavarr Binion, was found guilty of three counts of domestic battery, a misdemeanor (720 ILCS 5/12-3.2 (West 2022)). The trial court sentenced him to 18 months of conditional discharge. Defendant appealed, and the Office of the State Appellate Defender (OSAD) was appointed to represent him. OSAD moved for leave to withdraw, stating that an appeal would be without arguable merit.

¶ 3    We grant OSAD's motion and affirm the trial court's judgment.

¶ 4                                    I. BACKGROUND

¶ 5    On May 30, 2023, the State charged defendant with three counts of domestic battery. Count I alleged that defendant "knowingly caused bodily harm to Jena Grant, a family or

household member, by striking Jena Grant in the face." Count II alleged defendant "made physical contact of an insulting or provoking nature" with Grant by shoving her. Count III alleged defendant "made physical contact of an insulting or provoking nature" with Grant by striking her in the face.

¶ 6 On October 20, 2023, a document, signed by defendant and dated the previous day, was filed with the trial court, indicating defendant was pleading not guilty and waiving his right to a jury trial. At the start of defendant's bench trial on January 24, 2024, the court told defendant: "[O]rdinarily you have the right to either a jury trial or a bench trial. It's my understanding you've waived your jury trial rights previously. I see you've signed a waiver. You agree with that; right?" Defendant answered, "Yes."

¶ 7 The State's first witness was Grant. She testified that she and defendant were in a dating relationship, "[o]ff and on, for six years," they previously lived together, and defendant was the father of her six-year-old child. She testified that around 10:41 p.m. on May 26, 2023, defendant came to her home "uninvited" as some visiting friends were preparing to leave. She testified that she asked defendant to leave, but he refused, so she decided to leave. Grant turned her back to defendant and went to shut off the lights. She explained to the trial court, "Next thing I know, I was on the floor. He was punching me. I kicked him a couple of times to get him off me. He left, and I called the police."

¶ 8 Grant further testified she hit her head on a dog cage when she fell, and defendant punched her "a couple times." She specified that he punched her "[i]n the face" and she fell on the floor because he "pushed" her. She claimed that her friends had already gone outside, only she and defendant were in her residence when this took place, and his physical contact left a mark on her face.

¶ 9　　　　　On cross-examination, defense counsel asked Grant if she remembered telling police she could not say how defendant hit her and did not know if defendant punched her. She denied telling police this. Defense counsel also cross-examined Grant about five "danger assessment" questions police asked her. Defense counsel said:

> "You were asked if the physical violence had increased over the past year. You were asked has the suspect ever used a weapon against you or threatened you with a weapon. You were asked do you believe the suspect is capable of killing you. You were asked did the suspect ever try to choke you. And finally, you were asked is the suspect violently and constantly jealous of you. Do you remember being asked those five questions?"

Grant admitted she was asked those questions. She responded, "I think anybody is capable of killing someone," and she answered the other questions "no." She also insisted the questions referred to the past, not the day defendant struck her. Defense counsel also asked Grant if she told police she "stumbled" and "fell on the floor." She answered, "Well, when he pushed me, yes, I stumbled."

¶ 10　　　　　Officer John Gaffney of the Bloomington Police Department took the stand next. He testified that on May 26, 2023, he was sent to Grant's apartment. Defendant was not present when he arrived. He saw Grant had "some redness and a small laceration above the right eye." Defense counsel objected on foundation, contending Officer Gaffney was "not qualified to testify as to the type of injury it is" and he could not know it was a "laceration." The trial court overruled the objection. Officer Gaffney testified Grant told him defendant had "attacked" her. Officer Gaffney photographed Grant's injury, and the photograph was admitted into evidence.

¶ 11　　　　　On cross-examination, Officer Gaffney acknowledged he was wearing a body camera when he spoke to Grant, and body camera footage of his interaction with Grant was admitted into evidence. Officer Gaffney also confirmed he asked Grant the danger assessment questions. After refreshing his recollection, Officer Gaffney confirmed Grant answered "no to all five questions." Officer Gaffney did not remember whether Grant told him she had friends over when defendant arrived. Officer Gaffney agreed that if other people were present, he would have spoken to them, but he did not speak with anybody besides defendant. He also agreed that Grant was not able to tell him whether she was punched, slapped, or kicked. Defense counsel asked Officer Gaffney whether the alleged injury on Grant's face could have been acne, and Officer Gaffney answered he was not a dermatologist, but he guessed it looked similar.

¶ 12　　　　　The State rested, and defendant moved for a directed verdict, arguing the evidence was insufficient for a conviction. The trial court denied the motion, and defendant introduced no further evidence.

¶ 13　　　　　The trial court found defendant guilty of all three counts. Because Grant testified defendant forced her forward as she tried to turn off the lights, the court found defendant "shov[ed]" her, regardless of whether he used his hand, foot, or other body part. The court found defendant "repeatedly punched" Grant, she suffered a laceration above her eye, and she therefore incurred some bodily injury. The court further found defense counsel's cross-examination of Grant and Officer Gaffney did not meaningfully detract from their credibility as witnesses, especially because defendant introduced no "affirmative evidence" to provide any alternative account.

¶ 14　　　　　Defendant moved for a new trial, arguing the State failed to prove him guilty beyond a reasonable doubt because of weaknesses in Grant's testimony. The trial court denied the

motion. At sentencing, the court merged count III into count I and sentenced defendant to 18 months of conditional discharge, based on the parties' joint sentencing recommendations.

¶ 15    This appeal followed, and OSAD was appointed to represent defendant.

¶ 16    II. ANALYSIS

¶ 17    OSAD moves to withdraw as appellate counsel, citing *Anders v. California*, 386 U.S. 738 (1967), and *People v. Jones*, 38 Ill. 2d. 384 (1967). When an appointed attorney seeks leave to withdraw under *Anders*, the attorney must

> "so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Anders*, 386 U.S. at 744.

¶ 18    Here, OSAD states it reviewed the record and the applicable law, discussed the case with another attorney, and concluded that an appeal would be frivolous. OSAD filed a memorandum detailing four potential arguments on appeal and explaining why those arguments lack merit. OSAD also informed defendant of its conclusion and mailed him a copy of the motion. Defendant filed no response. After reviewing OSAD's motion and the record, we agree that the four issues counsel identified lack arguable merit, and we identified no other arguably meritorious issue, so we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 19    A. Sufficiency of the Evidence

¶ 20    The first issue in counsel's motion is the sufficiency of the evidence. To sustain a criminal conviction, the State bears the burden of proving each element of the charged offense

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979). If a defendant challenges the sufficiency of the evidence on appeal, the reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Id.* at 319. "[A] court of review will not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Gray*, 2017 IL 120958, ¶ 35. Instead, "it is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." *Id.*

¶ 21     The State charged defendant with three counts of domestic battery. Section 12-3.2 of the Criminal Code of 2012 provides, "A person commits domestic battery if he or she knowingly without legal justification by any means: (1) causes bodily harm to any family or household member; [or] (2) makes physical contact of an insulting or provoking nature with any family or household member." 720 ILCS 5/12-3.2 (West 2022).

¶ 22     The State accused defendant of shoving and striking Grant. Grant testified she and defendant had a dating relationship for six years, they lived together previously, and defendant was the father of her six-year-old child. No evidence was introduced to dispute their relationship. A "family or household member" includes "persons who share or formerly shared a common dwelling, persons who have or allegedly have a child in common," and "persons who have or have had a dating or engagement relationship" *Id.* § 12-0.1. Grant was clearly a member of defendant's family or household under this definition, and defendant could not now contest the trial court's finding so.

¶ 23     Nor could defendant raise a meritorious argument challenging the evidence he made physical contact of an insulting or provoking nature with Grant. She testified that as she

turned the lights off, defendant forced her to the ground, where he punched her. Both a shove and punch could qualify as physical contact of an insulting or provoking nature. See *People v. Davidson*, 2023 IL 127538, ¶ 16 ("[W]e hold that the trier of fact is asked to determine whether a reasonable person under the circumstances would find the physical contact insulting or provoking in nature."). Although defendant's trial counsel cross-examined Grant and attempted to discredit her claim, the trial court found her credible, and we defer to the factfinder's conclusions on the credibility of witnesses. *Gray*, 2017 IL 120958, ¶ 35. The same reasoning applies to the court's finding that defendant caused Grant bodily harm. She testified defendant's attack left a mark on her face, and Officer Gaffney testified he observed a "laceration" above her eye. A photograph of the mark was introduced into evidence. Defendant's trial counsel suggested the mark was acne, but, viewing the evidence in the light most favorable to the State, and deferring to the trial court's evaluation of the weight of the evidence, we find no arguable basis to reverse this finding. See *Jackson*, 443 U.S. at 319; *Gray*, 2017 IL 120958, ¶ 35. We agree with OSAD's conclusion that no basis to challenge this sufficiency of the evidence exists.

¶ 24                                    B. Motion for a New Trial

¶ 25         After his conviction, defendant moved for a new trial, arguing the evidence was insufficient for a conviction. He also argued the trial court erred by allowing Officer Gaffney to testify he observed a "laceration" on Grant's face. The court denied the motion. Now, OSAD contends defendant's argument lacked merit and the court ruled correctly.

¶ 26         We agree that defendant's motion for a new trial lacked merit. For the reasons stated above, we find the evidence was sufficient to convict. We likewise find that an appeal based on Officer Gaffney's use of the word "laceration" would fail. Defendant's trial counsel objected to the testimony based on foundation, arguing Officer Gaffney was "not qualified to testify as to the

type of injury it is." The trial court overruled the objection. We review a trial court's evidentiary rulings for abuse of discretion. See *People v. Santos*, 211 Ill. 2d 395, 401 (2004). "Moreover, even where an abuse of discretion has occurred, it will not warrant reversal of the judgment unless the record indicates the existence of substantial prejudice affecting the outcome of the trial." *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 27        Under Illinois Rule of Evidence 701 (eff. Jan. 1, 2011), opinion testimony of a lay witness must be limited to

> "those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Here, the word "laceration" alone did not necessarily imply any particular cause of Grant's injury, and we would characterize Officer Gaffney's testimony as simply a description of his observation. But even if the use of the word "laceration" is properly characterized as an opinion, Officer Gaffney's description of Grant's injury as a "laceration" was rationally based on his perception, helpful to a clear understanding of his own testimony, and required no scientific, technical, or specialized knowledge.

¶ 28        Furthermore, even if the trial court's ruling were erroneous, we would not find "substantial prejudice." Defendant's trial attorney cross-examined Officer Gaffney about the possibility the injury resulted from acne, and the court viewed a photograph of the injury. The court was able to evaluate the evidence and reach its own conclusion about the existence and cause of Grant's injury. Therefore, defendant's motion for a new trial based on this evidentiary ruling lacked merit, as would an appeal based on the same arguments.

¶ 29                                    C. Jury Waiver

¶ 30          OSAD's memorandum also considers whether defendant waived his right to jury

trial. Both the Illinois and United States Constitutions protect criminal defendants' right to a trial

by jury. Ill. Const. 1970, art. I, §§ 8, 13; U.S. Const., amends. VI, XIV; *People v. Dockery*, 296

Ill. App. 3d 271, 275 (1998). The Code of Criminal Procedure of 1963 also states:

> "Every person accused of an offense shall have the right to a trial by jury unless
>
> (i) understandingly waived by defendant in open court or (ii) the offense is an
>
> ordinance violation punishable by fine only and the defendant either fails to file a
>
> demand for a trial by jury at the time of entering his or her plea of not guilty or fails
>
> to pay to the clerk of the circuit court at the time of entering his or her plea of not
>
> guilty any jury fee required to be paid to the clerk." 725 ILCS 5/103-6 (West 2022).

To be effective, a waiver must be made knowingly and voluntarily. *People v. Bracey*, 213 Ill. 2d

265, 269 (2004). "If the facts are not in question, the issue of whether defendant knowingly waived

his right to a jury trial is a question of law that we review *de novo*." *People v. Hutt*, 2023 IL 128170,

¶ 30.

¶ 31          A challenge to defendant's jury waiver would lack merit. The record includes a

form, signed by defendant and dated October 19, 2023, indicating he waived his right to a jury

trial. On the day of the trial, the trial court directly addressed defendant and asked him if he had

waived his right to a jury trial. Defendant confirmed he had. The court then proceeded with the

bench trial, to which neither defendant nor his trial counsel objected. Any argument that defendant

did not waive his right to a jury would therefore lack arguable merit. See *id.* ¶¶ 31-36 (finding the

defendant's written waiver of his right to a trial by jury was valid, even though that written waiver

omitted some of the charges against him, because the court admonished him in open court

regarding his right to a jury trial and set the cases for a bench trial and the defendant voiced no objection).

¶ 32                                    D. Sentence

¶ 33        Finally, OSAD determined that an argument the trial court abused its discretion at sentencing would lack merit, and we agree. "A trial court's sentencing decisions are entitled to great deference and weight." *People v. Streit*, 142 Ill. 2d 13, 18 (1991). "A reviewing court must not substitute its judgment for that of the sentencing court merely because it would have weighed the factors differently." *Id.* at 19. Instead, we will overturn a trial court's sentence only if the court abused its discretion. *Id.* If the sentence is within the statutory limits, "we may only alter such a sentence when it varies greatly from the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *People v. Jones*, 2014 IL App (1st) 120927, ¶ 56.

¶ 34        Here, the permissible sentences for misdemeanor domestic battery include up to two years of conditional discharge or up to one year of imprisonment. 730 ILCS 5/5-4.5-55 (West 2022). The trial court accepted the State's and defendant's joint recommendations of 18 months of conditional discharge. This sentence complies with the statutory limits, both parties recommended it, and the court declined to impose the more severe sentence of imprisonment, which was a permissible sentence. Any argument defendant's sentence was excessive would lack merit.

¶ 35                                    III. CONCLUSION

¶ 36        For the reasons stated, we grant OSAD's motion to withdraw and affirm the trial court's judgment.

¶ 37        Affirmed.